### FRIESEN v. CHICAGO, R. I. & P. RY. CO.

(District Court, D. Nebraska, Lincoln Division. December 27, 1918.)

### No. 248.

RAILROADS ☞54½. New, vol. 6A Key-No. Series—FEDERAL COURTS—DISTRICT OF SUIT—RAILROAD ADMINISTRATION.

Under Act March 21, 1918, §§ 8, 10 (Comp. St. 1918, §§ 3115¾h, 3115¾j), and despite section 9 (section 3115¾i), held, that orders of the Director General of Railroads, through whom the President assumed control of the railroads pursuant to Act Aug. 29, 1916 (Comp. St. 1916, § 1974a) that suits against carriers while under federal control, should be brought in the county or district where the plaintiff resided at the time of the accrual action, were not effective to so limit that right, and, where authorized by state law, a plaintiff might sue in a district other than that in which he resided at the time of accrual of the action, upon a cause of action not arising out of the railway company's duties as a common carrier.

At Law. Action by Klaas N. Friesen against the Chicago, Rock Island & Pacific Railway Company, begun in the state court and removed to the federal court. On motion to dismiss. Denied.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Fawcett & Mockett, of Lincoln, Neb., for plaintiff.
E. P. Holmes, of Lincoln, Neb., for defendant.

MUNGER, District Judge. This action was begun in the state court on May 21, 1918. The petition alleged acts of negligence of the defendant railway company, on May 21, 1916, causing personal injuries to the plaintiff. The action was removed to this court and on June 10, 1918, the defendant moved to dismiss the action because the cause of action arose in Kansas and because the plaintiff resided in Kansas at the time of the accrual of plaintiff's cause of action. This motion was supported by an affidavit showing that the defendant would need a number of the railway employés as witnesses at the trial and it would inconvenience the operation of the railroad and cause great expense to require them to appear as witnesses at the trial. In support of its motion the defendant referred to General Orders No. 18 and No. 18a, dated April 9, 1918, and April 18, 1918, issued by the Director General of Railroads, providing that such suits against carriers, while under federal control, shall be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose. The plaintiff shows that he made a bona fide change of residence from Kansas to Nebraska immediately after the date of his injuries. He claims that the statute of limitations barred his beginning his action in Kansas from a few days after this action was begun.

The underlying question in the case is whether or not the Director General has authority to make the orders restricting the districts in which such a suit may be brought. The action, as begun in the state court, was against the defendant railway company as a corporation, and service of summons was made upon an agent of the company in the county wherein the suit was instituted, in accordance with the state statutes, permitting such service of process. Comp. St. Neb. 1913, §§ 7636, 7638.

The plaintiff's cause of action, as alleged in his petition, is based on negligent acts of the engineer of a railway train in running his train and thereby causing it to strike the plaintiff, when he was at a station and signaling to it to stop, so that he might board it as a passenger.

By Act Aug. 29, 1916, c. 418, 39 Stat. 619 (Comp. St. 1916, § 1974a), the President was empowered, "through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." The President by his proclamation of December 26, 1917, took possession of the railways and directed that they should "remain subject to all existing statutes and orders of the Interstate Commerce Commission and to all statutes and orders regulating commissions of the various states in which said systems

or any part thereof may be situated" until and except so far as the Director General should from time to time otherwise by general or special orders determine, and that any orders, general or special, thereafter made by said Director General should have paramount authority.  He also declared that suits might be brought by and against such carriers and judgments rendered as hitherto until and except so far as said Director General might by general orders otherwise determine.  The orders of the Director General complained of in this case were made on April 9, 1918, and April 18, 1918.  Before they had been made, an Act of Congress had been approved on March 21, 1918 (40 Stat. ——, c. 25).  This act was the subject of long debate in each house of Congress.  It limited in many ways the powers that had previously been conferred on the President to control the railways.  By section 10 (Comp. St. 1918, § 3115¾j), it was provided:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President.  Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government.  Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted.  But no process, mesne or final, shall be levied against any property under such Federal control."

By reference to section 1 of the act (Comp. St. 1918, § 3115¾a) we are informed that the word "carriers" in the act refers to certain railroads and systems of transportation of which the President had theretofore taken possession and control.

The plaintiff claims that the words of section 10, "actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law," authorized him to bring suit against the defendant in the manner then authorized; that is, on March 21, 1918, when this act was approved, and that his action was so brought conformably to the laws of Nebraska then in force.

On behalf of the defendant, it is contended that these words, when viewed together with the whole act, and its scope and purpose are considered, merely allow the carrier to be named as a defendant, notwithstanding the fact that the United States is in control and operating the railways; that this was meant to give relief to claimants, so that they could express their grievances by suits in court instead of by appeals for executive or congressional clemency.  It is also contended that by the preceding words of this section, which read:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions

of this act or any other act applicable to such federal control or with any order of the President"

—the President is given authority to make orders limiting the place where suits may be brought. The contention is that federal or state laws must give way when they are inconsistent either with the provisions of that act or with any order of the President, and that an order of the Director General of Railways is an order of the President by virtue of the terms of section 8 (Comp. St. 1918, § 3115¾h), as follows:

"That the President may execute any of the powers herein and heretofore granted him with relation to federal control through such agencies as he may determine."

It will be noted that by the terms of section 10, the carriers are not made subject to all federal and state laws, but are subject only to all laws and liabilities "as common carriers." In many relations to the public, carriers are governed, not by the rules applicable to common carriers, but by rules relating to them merely as corporations, as contracting parties, or as owing duties apart from the carriage of goods or passengers. The use of the words "common carriers" is thus distinguished from the word "carriers" which is used in the first sentence of this section and in many places in the same section and in other sections of the act. The probable effect of the discrimination in the use of these words was pointed out in the debate in the Senate (56 Cong. Rec. 3576, 3580). If Congress had desired to leave to the President the entire control and management of the railways of the United States by executive orders, the former act of Congress did not require amendment; or, if Congress desired to continue the grant notwithstanding the careful restrictions in the second act, it could have employed the words "carriers" or "railway companies," instead of the words "common carriers," and omitted the words "except so far as may be inconsistent with the provisions of this act."

The plain meaning of the words used in this section is that the laws then existing governing the relationship of the railways as common carriers were to remain in effect except when they were inconsistent with the terms of that act of Congress or of any other act applicable to federal control or with any order of the President. Orders of the President relating to the carriers' duties and liabilities, other than as common carriers, were not authorized by this portion of section ten. The authorization of the bringing of an action at law as then provided by law, against the railway company upon a cause of action, not arising against it as a common carrier, was therefore not subject to an order of the President limiting the districts in which such an action could be commenced, because of anything contained in this section of the act of Congress. Authority for the orders in question, as applied to an action of this kind, is sought in the provisions of section 9 (Comp. St. 1918, § 3115¾i), as follows:

"That the provisions of the act entitled 'An act making appropriations for the support of the army for the fiscal year ending June thirtieth, nineteen hundred and seventeen, and for other purposes,' approved August twenty-

ninth, nineteen hundred and sixteen, shall remain in force and effect except as expressly modified and restricted by this act; and the President, in addition to the powers conferred by this act, shall have and is hereby given such other and further powers necessary or appropriate to give effect to the powers herein and heretofore conferred."

It may be conceded that the President would have been authorized to make these orders under the broad grant of power in the act of August 29, 1916, but by the terms of section 9 this grant thereafter remains in force "except as expressly modified and restricted in this act," and the President is granted further powers "necessary or appropriate to give effect to any of the powers herein and heretofore conferred." These words are a restriction of the powers previously vested in the President, so that he may not take action contrary to the provisions of this act of Congress. It was manifestly not the purpose of Congress in the elaborate provisions of this act to give authority by which the President might abrogate any or all of it. The provisions for financial management of the roads while under federal control and for the reimbursement of the owners; the right of the Interstate Commerce Commission, under the terms of section 10, to hear complaints of the justness of an order of the President establishing or changing rates, regulations, and practices of the carriers; the creation of a criminal offense, by the terms of section 11 (Comp. St. 1918, § 3115¾k), for violation of the act or interfering with the possession or use of the property of the carrier; the declaration in section 12 (Comp. St. 1918, § 3115¾l) that moneys and other property derived from the operation of the carriers during federal control are the property of the United States; and the declaration in section 14 (Comp. St. 1918, § 3115¾n), that the period of federal control shall not extend beyond 21 months after the proclamation of the President of the exchange of ratifications of the treaty of peace—are illustrations of powers, liabilities, and limitations that were not subject to annulment by an executive order. The general grant of power in section 9 is to give effect to the powers "herein and heretofore granted," and not to the powers herein or heretofore granted, and the prior act remains in force "except as expressly modified and restricted by this act."

The conclusion is that the plaintiff was authorized by the act of March 21, 1918, to bring his action at law according to the laws then in force, and that General Orders Nos. 18 and 18a of the Director General of Railroads were not effective to so limit that right as to require that a suit be brought only in the county or district of his residence or where the cause of action arose. This conclusion has not been reached without respectful consideration of the views of Judge Trieber in an unpublished opinion in the case of Wainwright v. Pennsylvania Railroad Company; but I am unable to concur in his conclusion that the statute authorizing suits to be brought as now provided by law may be limited by an executive order to the use of a part of the methods provided by law.

An order in accordance with these views will be entered in this case.