G. ROBITZEK & BRO., Inc., v. DAVIS, Director General of Railroads, et al.

(Circuit Court of Appeals, Second Circuit. December 17, 1923.)

No. 103.

1. Towage ⬤⟹11(11)—Director General of Railroads held liable for injury to tow.

Where libelant's barge, the middle one in second tier of three, was injured by the breaking of lines on starboard tow in the same tier, held, that the Director General of Railroads operating the tug was liable for not making proper investigation as to the lines.

2. Shipping ⬤⟹209(3)—Objection to notice by Director General of Railroads held without merit.

A contention by owner of injured barge that notice sent by Director General limiting liability was ineffective because headed "Pennsylvania Railroad Company" was without merit, such railroad at the time of the notice being under federal control.

3. Corporations ⬤⟹428(8)—Receipt of registered letter by superannuated watchman held not notice to corporation.

A registered letter from the Director General of Railroads to a corporation owning barges, concerning limitation of liability for injuries to tows, did not constitute notice to the corporation, where it was received and receipted for by a superannuated watchman; officers of the corporation swearing positively that they did not receive the letter.

4. Shipping ⬤⟹209(3)—Burden of proof on Director General of Railroads to show service of notice limiting liability.

In action against Director General of Railroads for injuries to tow, the burden was upon the defendant to prove the receipt of a notice by the libelant limiting liability for injuries to tow.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by G. Robitzek & Bro., Inc., against James C. Davis, as Director General of Railroads, and another. From a final decree adjudging that libelant recover from Davis and the Central Hudson Steamboat Company $1,293.69, and that each of said parties pay one-half of the amount, Davis appeals. Affirmed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellant.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for libelant-appellee.

Duncan & Mount, of New York City (Warner Pyne and Dudley C. Smith, both of New York City, of counsel), for respondent-appellee.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. On the afternoon of December 17, 1918, a tow of 16 to 18 light barges in tiers 3 abreast was made up at the Pennsylvania Railroad stakeboat off the Statute of Liberty. Libelant's barge, Arthur R., was the center boat in the third tier. Respondent Central Company's boat, Mamie Nelson, was alongside the Arthur R. on its starboard side. The tug Mercer of Pennsylvania Railroad Company, then being operated under federal control by Davis, Director General, took this fleet in tow astern on a hawser bound through the Kills for South Amboy, N. J.

A stop was made at Elizabethport to pick up additional barges and, about 1 a. m. of December 18th, the tow left there for South Amboy. As the tow was passing through the Baltimore & Ohio Railway Company bridge over Arthur Kill, the Mamie Nelson came into contact with the abutment of the bridge and struck the Arthur R. to the latter's damage.

The sole eyewitness of the occurrence who testified on the trial below was Weber, the lookout on the Mercer. According to him, he first noticed something wrong in the tow when, about off the Baltimore & Ohio coal docks, he saw that the Mamie Nelson "was sticking way out." He called the situation to the attention of the pilot, who stopped the Mercer and blew the danger signal. In response to that signal, the tug Tracy from the Baltimore & Ohio coal docks came out and went alongside of the Mamie Nelson. The engines of the Mercer remained stopped, and, because of this, the tug was drifting with the ebb tide toward the Baltimore & Ohio bridge. The Tracy endeavored to get the Mamie Nelson back into the tow and, as testified by Weber:

"He shoved her into position to make fast, but for some reason they didn't get the boat fast, and approaching the center abutment of the Baltimore & Ohio bridge the tugboat was compelled to leave go or hit the bridge himself, so he let go. * * * The Mamie Nelson swung out and struck the center abutment of the Baltimore & Ohio bridge," and then "she broke loose."

We are satisfied from the testimony that the Mercer was not guilty of any fault in her navigation in or about the Baltimore & Ohio bridge, but that the proximate cause of the accident was the rotten condition of the Mamie Nelson's lines. It is plain that these lines for practical purposes were useless, when subjected to a strain of any consequence.

There is no evidence that the master or any one else on the Mercer made either inspection or inquiry concerning the lines when the tow was made up or at any time thereafter. The pilot was not called, nor does the record disclose any explanation of his absence.

[1] It must be concluded from the testimony that the Mercer thus started off with this tow without even the slightest investigation by her master or pilot as to the lines of the barge Mamie Nelson, and we think the testimony shows that even a slight investigation would have disclosed the unfit condition of the lines. Indeed, Weber testified that, after the occurrence, he told the captain of the Mamie Nelson "that his lines were rotten and were not fit to tow with," and that the captain answered, "They were the best he had; that the boss would not give him any better."

In these circumstances, the Director General is liable as well as the Central Co. The Quickstep, 9 Wall. 665, 19 L. Ed. 767.

In The Sunnyside, 251 Fed. 271, 163 C. C. A. 427, the facts are quite different from those in the case at bar. In that case, the lines were examined, and the court held that the examination was reasonable, but the defect was not readily discoverable because the lines were unsound at the core.

[2] Relying on Ten Eyck v. Director General of Railroads (C. C.) 267 Fed. 974, certiorari denied Hartman-Blanchard Co. v. Ten Eyck, 254 U. S. 646, 41 Sup. Ct. 14, 65 L. Ed. 455, the Director General contends that he is relieved of liability because he sent to libelant a notice exactly similar (except as to its heading) with that quoted in the Ten Eyck Case, supra. As libelant has argued that because the notice in the case at bar was headed "Pennsylvania Railroad Company," it proceeded from the railroad and not from the Director General, we may, at once, dispose of that contention as without merit in view of the fact that on September 1, 1918, the date of the letter, the railroad was under federal control.

[3] The question in this case, however, is whether the notice was received by libelant corporation. The testimony is that a registered letter was addressed to libelant and received and receipted for by one Holmes. It appears that Holmes, who was 78 years of age, had been in the employ of libelant for 35 or 40 years, and, at the time that he receipted for the registered letter, he was a sort of superannuated watchman. He described his duties as "watching around there through the day and staying there a while after the office staff goes away nights and seeing that the office is shut up. * * * I am merely a kind of watchman, through the daytime."

The notice to Holmes was obviously not notice to libelant.

[4] When Holmes received mail, he generally put it on the flat of the desk of either Edward Robitzek, president of libelant or of his son Arthur H. Robitzek, treasurer of libelant. Both the Robitzeks swore positively that they had not received the letter in question, and there is no reason to doubt this testimony. So far as may be inferred from the record, libelant is a reputable corporation engaged in the coal business. It is hardly to be supposed that its principal officers would testify falsely in a controversy of this kind. The burden was upon the appellant to prove the receipt of the notice, and this burden was by no means sustained.

As, therefore, we find as a fact that the letter was not received by the corporation so as to constitute notice to it, the negligence of appellant in this case cannot be excused.

Decree affirmed with costs to libelant-appellee against appellant.