### NEW JERSEY SHIPBUILDING & DREDGING CO. v. DAVIS, Agent, etc., and eight other cases.

(District Court, S. D. New York. October 9, 1925.)

Shipping ⬅⮞3½, New, vol. 8 A Key-No. Series—Suit maintainable against Director General of Railroads, arising out of collision by tug engaged in towing service and not as common carrier (Transportation Act 1920, § 206 [Comp. St. Ann. Supp. 1923, § 10071¼cc]; Federal Control Act March 21, 1918, § 10 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j]; General Order No. 50; Act Aug. 29, 1916, § 1 [Comp. St. § 1974a]; President's Proclamation Dec. 26, 1917 [40 Stat. 1733]).

Under Transportation Act 1920, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼cc), construed together with Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), and General Order No. 50, Act Aug. 29, 1916 (Comp. St. § 1974a) and President's Proclamation Dec. 26, 1917, affording persons, suffering loss from government operations of railroads, same right to sue as if properties remained under private ownership, suit is maintainable against Director General arising out of collision by tug operated by him as part of railroad transportation system, although engaged at time of collision in towing service and not as common carrier.

In Admiralty. Separate libels by the New Jersey Shipbuilding & Dredging Company against James C. Davis, as Agent representing the Lehigh Valley Transportation Company, and James C. Davis, Director General of Railroads, as Agent; by the James McWilliams Blue Line, owner of the scow barges D. R. Roe and S. E. Vincent, and another, on their own behalf and as bailees of the cargo of the D. R. Roe, against Walker D. Hines, etc.; by the William J. Fee Coal Company, the James McWilliams Blue Line, owner of the scow barges D. R. Roe and S. E. Vincent, and another, on their own behalf and as bailees of the cargo of the D. R. Roe; by the George M. Morrell Company, Inc., owner of the barge Elizabeth M.; by the McIlroy Livingston Transportation Company, Inc.; by William D. Dittmar, owner of the barge Angler, and by the Red Star Towing & Transportation Company, against James C. Davis, Director General of Railroads, as Agent. Decree for libelants.

Decree affirmed 12 F.(2d) ——.

See, also, 291 F. 617; 298 F. 601.

Alexander & Ash, of New York City, for libelant New Jersey Shipbuilding & Dredging Co.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for libelants George A. Morrell Co., Inc., McIlroy-Livingston Transportation Co., and Dittmar.

Bigham, Englar & Jones, of New York City (James W. Ryan, of New York City, of ·counsel), for respondent Davis.

THACHER, District Judge. The exceptions filed to the master's reports in these cases, and the suggestions that the court is without jurisdiction, present only questions which have already been decided by this court in various phases of this litigation. This being the case, there is nothing to do but to overrule the exceptions. Ordinarily this would be done without comment, but respondent, upon at least one phase of the case, insistently urges that the prior decisions of this court have been overruled by the Supreme Court in Standard Oil Co. v. Southern Pac. Co. (Proteus-Cushing) 45 S. Ct. 465, 268 U. S. 146, 69 L. Ed. 927, 1925 A. M. C. 779. This contention perhaps justifies consideration.

The respondent, as agent for the Lehigh Valley Railroad Company, insists that under section 10 of the Federal Control Act of March 21, 1918 (chapter 25, 40 Stat. 451 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j]), and section 206 of the Transportation Act of 1920 (chapter 91, 41 Stat. 461 [Comp. St. Ann. Supp. 1923, § 10071¼cc]), the government has not consented to be sued in connection with its control and operation of the railroad and transportation systems of this country, except for liabilities incurred in performing the services of a common carrier, and that therefore there is no jurisdiction to entertain these suits because the tug Mahoney, although operated by the Director General as part of the Lehigh Valley transportation system, was at the time of the collision engaged in a towing service, and not as a common carrier of freight or passengers. Fundamentally the question turns upon the proper construction of section 10 of the Federal Control Act of March 21, 1918 (chapter 25, 40 Stat. 451), and section 206 (a) of the Transportation Act of 1920 (chapter 91, 41 Stat. 461).

· Prior to the passage of the Federal Control Act of March 21, 1918, the President had taken possession and control of the railroads under Act Aug. 29, 1916, c. 418,

39 Stat. 619, 645 (Comp. St. § 1974a), and in so doing, by his Proclamation of December 26, 1917, 40 Stat. 1733, had declared:

"Except with the prior written assent of said Director General no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director General may, by general or special orders, otherwise determine."

Section 10 of the Federal Control Act, passed March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), reads as follows:

"Sec. 10. That ·carriers while under federal control shall be subject to all laws and · liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against ·the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. * * * "

Pursuant to the Federal Control Act the Director General on October 28, 1918, promulgated General Order No. 50, which provided:

"Actions at law, suits in equity and proceedings in admiralty hereafter brought in any court, based on a contract binding upon the Director General of Railroads, claims for death or injury to person, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise: Provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures."

This General Order interpreted section 10 as authorizing suits against the Director General whenever such suits except for federal control might have been brought against

the carrier company, suits for fines, penalties, or forfeitures alone being excepted. Liabilities recognized as enforceable by suit against the Director General were not limited to those arising out of his operations as a common carrier, but included all liabilities arising during the period of federal control and growing out of the possession, use, control or operation of any railroad or system of transportation. No decision has been cited to show that the promulgation of this order was unauthorized under the terms of section 10 of the Federal Control Act.

In Hines v. Sangsted S. S. Co., 266 F. 502, the Circuit Court of Appeals in the First Circuit held that actions against carriers authorized under section 10 of the Federal Control Act are not limited to such as arise out of the breach of some duty imposed on the defendant as a common carrier. See, also, Friesen v. Chicago, R. I. & P. R. Co., (D. C.) 254 F. 875. And in this circuit the Director General has been held liable for negligent towage. G. Robitzek & Bro. v. Davis (C. C. A.) 296 F. 107; The Fred B. Dalzell, Jr. (C. C. A.) 1 F.(2d) 259.

In Missouri Pacific R. Co. v. Ault, 41 S. Ct. 593, 256 U. S. 554, 65 L. Ed. 1087, it was said, with reference to section 10 of the Federal Control Act:

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President except in so far as such rights or remedies might interfere with the needs of federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917, to cases where the cause of action arose before that date and the suit against the company was filed after it, and to cases where both cause of action and suit had arisen or might arise during federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose Congress accomplished by providing that 'carriers while under federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as theretofore. Here the term 'carriers' was used as it is understood in common speech, meaning the transportation systems as distinguished from the corporations owning or operating them. * * * Thus, under section 10, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest as by fixing the venue, or the time for trial. If the cause of action arose while the government was operating the system the 'carrier while under federal control' was nevertheless to be liable and suable."

When, in 1920, Congress returned the transportation systems of this country to private ownership, it became necessary to provide for the continuance of pending suits arising out of federal possession and control, and for the enforcement of liabilities not already in suit arising out of such possession and control. This was done by section 206 (a) of the Transportation Act of 1920 (chapter 91, 41 Stat. 461), reading as follows:

"Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. * * * *"

It seems quite reasonable to assume, as the respondent suggests, that in surrendering control of the transportation systems, Congress did not intend to broaden the right of suit which had theretofore existed under section 10 of the Federal Control Act; but, if this is so, it is quite apparent from the language of section 206 (a) of the Transportation Act that Congress itself adopted the

construction of section 10 of the Federal Control Act, which had been consistently followed up to that time under General Order No. 50: That this construction included liabilities such as those sought to be enforced in this action is clear from the Sangsted, Dalzell, and Robitzek Cases, cited supra. Therefore it is quite immaterial whether section 206 (a) is to be regarded as broadening the right of suit granted in section 10 of the Federal Control Act, or as a legislative construction of that section. The two sections, in any event, must be read and construed together, and when so construed leave no doubt as to the purpose of Congress —that any action arising out of the possession, use or operation by the President of the railroads and systems of transportation which could have been brought against the carrier prior to federal control may, after the termination of federal control, be brought against the agent designated by the President for such purpose.

From this review it appears that, from the date of the original Proclamation of December 26, 1917, down to the passage of the Transportation Act of 1920, throughout the entire period of federal control, it was the consistent purpose of Congress and of the Executive to afford to all persons suffering loss and damage arising out of governmental operation and control the same right to sue therefor as if the properties had remained under private ownership and control. But it is insisted that this must all go for naught, because of the decision of the Supreme Court of the United States in Standard Oil Co. v. Southern Pac. Co. (Proteus-Cushing) 45 S. Ct. 465, 268 U. S. 146, 69 L. Ed. 927, 1925 A. M. C. 779. What was decided in that case was that section 10 of the Federal Control Act was not intended to authorize suits between carriers and the Director General arising out of the operation of their properties. In so deciding Justice Butler said:

"Waiver of sovereign immunity from suit was not broad enough to permit an action in tort by the company against the Director General for the loss of the Proteus. See Federal Control Act, c. 25, § 10, 40 Stat. 456; Dupont de Nemours & Co. v. Davis [44 S. Ct. 364] 264 U. S. 456, 462 [68 L. Ed. 788]; Missouri Pacific R. R. Co. v. Ault [41 S. Ct. 593] 256 U. S. 554 [65 L. Ed. 1087]. In respect of that, there was no breach of duty owed to the respondent by the Director General *as a common carrier*."

It is significant that in support of this rule Justice Butler cited Missouri Pacific R. Co. v. Ault, 41 S. Ct. 593, 256 U. S. 554, 65 L. Ed. 1087, from which the language of Justice Brandeis is quoted supra. Section 10 of the Federal Control Act deals only with suits *against* the carriers, and plainly could have no application to an action brought by a carrier against the Director General for damages to properties taken over by the President. I cannot believe that the mere statement in the Proteus-Cushing Case that the Director General owed to the Southern Pacific Railroad Company in connection with the loss of one of its steamships no breach of duty as a common carrier was intended as a decision that, in actions brought by third parties against the Director General for loss and damage to property, such a breach of duty must always be shown. I therefore see no reason or propriety in departing from the prior decisions of the court, and should have been content to follow these decisions without comment, except for the insistence of the respondent that they are shown to be wrong by the decision of the Supreme Court in Standard Oil Co. v. Southern Pac. Co. (Proteus-Cushing) 45 S. Ct. 465, 268 U. S. 146, 69 L. Ed. 927, 1925 A. M. C. 779.

The contentions of the respondent with reference to the question of personal jurisdiction over the singular or plural personality of the Director General have been so often raised and decided in this litigation that nothing need be said at this time. The record is now in such condition that these questions may be reviewed and complete justice done in the Circuit Court of Appeals, if decisions contrary to those already rendered in this court shall upon review be found necessary.