## STANDARD OIL COMPANY OF NEW JERSEY *v.* SOUTHERN PACIFIC COMPANY AND JAMES C. DAVIS, DIRECTOR GENERAL OF RAILROADS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 197. Argued January 19, 1925.—Decided April 20, 1925.

1. The Federal Control Act did not authorize an action in tort by the owner of a vessel against the Director General of Railroads for her loss through collision while operated by the Director General P. 154.

2. Where the Director General, under his contract with the owner for the use and upkeep of transportation properties taken over under the Federal Control Act, made a settlement including an allowance for a vessel lost by collision during operation by the Director General, *held* that the common law rule that one who accepts satisfaction from one of two joint tort-feasors can not recover from the other was inapplicable to extinguish the claim of the owner against the owner of the other vessel in pending limitation of liability proceedings to which both owners and the Director General were parties. *Id.*

3. Upon an appeal in admiralty there is a trial *de novo* opening the whole case, so that a party is not bound by the decree below through failure to join in the appeal. P. 155.

4. In the absence of a market value, such as is established by contemporaneous sales of like property in the ordinary way of business, the damages to which the injured party is entitled in admiralty for the loss of a vessel is that amount which, considering all the circumstances, probably could have been obtained for her on the date of the collision—the sum that in all probability would have resulted from fair negotiations between an owner willing to sell and a purchaser desiring to buy. P. 155.

5. Cost of reproduction as of the date of valuation is evidence to be considered but neither that, nor that less depreciation, is the measure or the sole guide; value is the thing to be found, and there should be a reasonable judgment of this based on a proper consideration of all relevant facts. P. 156.

6. In view of changed prices, *held* that original cost of a vessel was not a useful guide to her value when lost. P. 157.

292 Fed. 560, affirmed.

CERTIORARI to a decree of the Circuit Court of Appeals modifying a decree of the District Court (266 Fed. 570; 285 id. 617) in proceedings for limitation of liability, in admiralty. The District Court found that both the petitioner's vessel and that of the Southern Pacific Company were at fault, and fixed the damages of the latter. The Circuit Court of Appeals found petitioner's vessel alone at fault and increased the damages. For preliminary proceedings in this Court, see 263 U. S. 681, 696; 265 U. S. 569.

*Messrs. John M. Woolsey* and *William H. McGrann* for petitioner.

The settlement made between the Director General of Railroads and the Southern Pacific Company, by payment to the latter of the value of the Proteus in exchange for a release, constituted a satisfaction of the claim of the Southern Pacific Company in respect of the loss of the Proteus. Any allowance that can now be made herein for the loss of the Proteus can only be for a payment to the Director General of such an amount, not exceeding the amount thus paid by him in settlement, as will represent the value of the Proteus.

When two tort-feasors by their concurrent negligence have caused an injury to a third person, they are jointly and severally liable to him under the salutary doctrine laid down in the overwhelming majority of the courts of this country. *The Atlas,* 93 U. S. 302, at page 318; *Boyer* v. *Sturgis,* 24 How. 122; *Colegrove* v. *N. Y. N. H.*

& H. R. R. Co., 20 N. Y. 492; *Carlton* v. *Boudar*, 118 Va. 521; *Walton, Witten & Graham* v. *Miller*, 109 Va. 210; *Feneff* v. *Boston & Me. Ry.*, 196 Mass. 575; *Cuddy* v. *Horn*, 46 Mich. 596; *Drown* v. *New Eng. T. & T. Co.*; 80 Vt. 1; *Slater* v. *Mersereau*, 64 N. Y. 138; *Corey* v. *Havener*, 182 Mass. 250; *McClellan* v. *St. Paul M. & M. Ry.*, 58 Minn. 104; *Reynolds* v. *Kansas City*, 180 Mo. App. 138; *City of Louisville* v. *Heitkemper's Adm'x*, 169 Ky. 167; *The Ira M. Hedges*, 218 U. S. 264.

There is not any doubt that, under the law as laid down by this Court, the Southern Pacific Company, as the innocent owner, could have sued either the Standard Oil Company or the Director General for the negligent sinking of the Proteus and recovered full damages from either tort-feasor, or it could have sued them jointly and recovered a moiety of its damages from each in the first instance, with a right over against the other tort-feasor for any deficiency not paid by the respondent against whom execution first issued. But once it had received from one of the tort-feasors full satisfaction for its loss, as it has done here, it could not pursue the other tort-feasor for further damages for the excellent reason that it would not have any cause of action left. *The Beaconsfield*, 158 U. S. 303, 307; *The Atlas, supra; Lovejoy* v. *Murray*, 3 Wall. 1; *Jennings* v. *Dolan*, 29 Fed. 861; *Albright* v. *McTighe*, 49 Fed. 817; *United States* v. *Murphy*, 15 Fed. 589; 1 Williston Contracts, § 334, 338a; 26 Harv. L. R., 658; 34 Harv. L. R., 442; 12 Harv. L. R., 66; *Seither* v. *Philadelphia Transaction Co.*, 125 Pa. St. 397.

That leaves the equities of contribution to be worked out between the Director General and the Standard Oil Company. The right of contribution in such a case " belongs to the substantive law of the admiralty." *The Ira M. Hedges, supra; Erie R. R. Co.* v. *Erie & Western Trans Co.*, 204 U. S. 220.

It is settled law that there is a new trial in admiralty on appeal to the Circuit Court of Appeals or on certiorari to

this Court. *Reid* v. *Fargo,* 241 U. S. 544; *Watts* v. *Unione Austriaca,* 248 U. S. 9; *The John Twohy,* 255 U. S. 77. We must look, therefore, at the facts, as now developed on the new evidence taken in this Court. Now that the Southern Pacific Company has been cut out of the case by the satisfaction of its claim, the only question left is what allowance the Director General should have in the collision adjustment in respect of the Proteus. The Director General did not appeal and, therefore, we submit, cannot be allowed more than the District Court allowed as the value of the Proteus. Cf. *The Beaconsfield,* 158 U. S. 303, 310. Certainly there is not any question but that the largest claim which he can now possibly make is for reimbursement to the extent of the amount which he had paid to his bailor in settlement of his contract obligation to make the bailor whole. Cf. *Vermilye* v. *Adams Express Co.* 21 Wall. 138.

The rule of damage applied by the Circuit Court of Appeals is erroneous in that it is based on an arbitrary formula, the two factors of which are a speculative reproduction cost, and an uncertain depreciation rate; which operates to exclude other material factors in arriving at fair valuation. The proper rule is that adopted by the District Court, and by the Commissioner, whereby, in the absence of a provable market value, all other relevant facts are considered in determining the measure of the loss. There was not any market value for the Proteus at the time of her loss. *Gulf Refining Co.* v. *United States,* 58 Ct. Cls. 559. The burden of proof to establish the loss rested on the Proteus interests (Southern Pacific Company and Director General of Railroads). *The Conqueror,* 166 U. S. 110; Sedgwick on Damages, 9th ed. Vol. 1, p. 181. The Circuit Court of Appeals based its valuation squarely and exclusively on the reproduction and depreciation theory. The factor of "cost of reproduction" which was taken to be $1,750,000, is highly speculative and excessive. The second factor, that of "depreciation," which the

Circuit Court of Appeals assumed to be two and a half per cent. per year, was also unreasonable and unduly advantageous to the respondents, and its acceptance greatly enhanced the result obtained by the formula, and to the disadvantage of the petitioner. A rate of five per cent. of the book value (for each year) as depreciation, was held to be a reasonable allowance for deduction from value, in the case of *San Francisco & Portland SS. Co.* v. *Scott, Collector,* 253 Fed. 854; *United States* v. *Standard Oil Co.,* 258 Fed. 696; *The Anhauac,* 295 Fed. 346; *The Harmonides,* 1903 Prob. Div. 1.

The application of the reproduction and depreciation method so exclusively is not supported by the weight of authorities. The cases show a wide latitude in considering all elements which bear on the question of the measure of the loss under the circumstances here: *The Colorado,* Brown Adm. 411, Fed. Cas. No. 3029; affirmed, *The Colorado,* 91 U. S. 692; *Leonard* v. *Whitwill,* 19 Fed. 549; *City of Alexandria,* 40 Fed. 697; *The H. F. Dimock,* 77 Fed. 226; *The Mobile,* 147 Fed. 882; *The Lucille,* 169 Fed. 719; *Alaska S. S. Co.* v. *Inland Nav. Co.,* 211 Fed. 840; *The Iron Master,* 1 Swabey Adm. Rep. 441; *The Clyde, Id.* 23 (1856); *Shipping Controller* v. *Lloyds Royal Belge Ltd.,* 1 L. R. 231, 389; K. B. D. Com. Court Nov. 10, 1919; *Harries* v. *Shipping Controller* (May 14, 1918), 14 Asp. Mar. Cas. 320; *The Harmonides, supra; The Winkfield* (1902) P. B. 42; 9 Asp. 259 (July 23, 1903); Roscoe on Damages in Marine Collisions, 2nd ed., p. 166; Marden's Collision at Sea, 7th ed., p. 119. All the circumstances bearing on the value of the Proteus to the respondents (particularly in its aspect as a loss) must be considered as relevant in arriving at an amount which would fulfill the requirements of the doctrine of "*restitutio in integrum.*" *The Iron Master,* Swb. 443; *The Harmonides, supra; The Minnesota Rate Cases,* 230 U. S. 433; *The Utopia,* 16 Fed. 507. Indeed, the "reproduction and depreciation" method as applied by the Circuit

Court of Appeals is contrary to analogous cases decided in other circuits. *The H. F. Dimock, supra; La Normandie,* 58 Fed. 427; *Whitehurst v. United States,* 272 Fed. 46; *The J. E. Trudeau,* 54 Fed. 907; *The Samson,* 217 Fed. 344; *The I. C. White,* 295 Fed. 593. The so-called "rate making" cases are somewhat analogous, in so far as a "fair value" is sought as the basis of fixing a reasonable rate for public utilities. *Smyth v. Ames,* 169 U. S. 466; *Galveston Electric Co v. City of Galveston,* 258 U. S. 388; *The Minnesota Rate Cases, supra; Georgia Ry. & Power Co. v. Railway Comm.,* 262 U. S. 625. The same broad rule is also applied in comdemnation proceedings. *Hanson Lumber Co. v. United States,* 261 U. S. 581; *United States v. New River Collieries Co.,* 262 U. S. 341; *Brooks-Scanlon Co., v. United States,* 265 U. S. 106; *United States v. Boston C. C. & N. Y. Canal Co.,* 271 Fed. 877.

Many of the cases reject "reproduction" values, particularly, where, as in the present case, they are founded on transitory and abnormal costs of production. *Mersey Docks and Harbor Board,* 3 K. B. Div. 223, distinguished. Abnormal and transitory values should not control, even where market value is the test. *City of New York v. Sage,* 239 U. S. 57; *Reno Co. v. Pub. Ser. Comm.,* 298 Fed. 790; *In re Inwood Hill Park,* 189 N. Y. S. 642; *Lawrence v. Boston,* 119 Mass. 126; *Brown v. Calumet River Ry. Co.* 125 Ill. 600; *Languist v. Chicago,* 200 Ill. 69.

The fact that the Proteus was a requisitioned vessel, and that her owner was deprived not only of the power to dispose of her by sale, but of the right to her use, at least until after March 1, 1920, was an important factor in measuring the damage sustained at the time of her loss, and one which the Circuit Court of Appeals plainly disregarded. The courts have recognized that vessels requisitioned because of war conditions suffered thereby a decrease in value to their owners. *The Kia Ora,* 246 Fed. 143; *Harries v. Shipping Controller, supra; Shipping Con-*

*troller* v. *Lloyds Royal Belge, supra. Braceville Coal Co.* v. *People,* 147 Ill. 66; *International News Serv.* v. *Associated Press,* 248 U. S. 215. The original cost of the Proteus, which was less than half of the amount awarded by the Circuit Court of Appeals as measuring her value at the time of the loss, was entirely disregarded as a factor in ascertainment of the measure of the damage. The Proteus was of a special type of construction, which would have operated to reduce her sale value in the open market. That fact was disregarded by the Circuit Court of Appeals. The application of the scale of valuation fixed for vessel property by the Advisory Board of the War Risk Insurance Bureau at the time of her loss, indicates that the Proteus was worth less than $700,000, according to the Advisory Board's scale.

*Mr. C. C. Burlingham,* with whom *Mr. Van Vechten Veeder* and *Mr. A. Howard Neely* were on the briefs, for respondents.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

August 19, 1918, the steamship Cushing, owned by the petitioner, Standard Oil Company, and the Proteus, owned by the respondent, Southern Pacific Company, and operated by the Director General of Railroads, collided. The Proteus and her cargo were lost. Petitioner and respondents filed their petitions for limitation of liability. R. S. §§ 4283–4285. Admiralty Rule 54. The proceedings were consolidated. The District Court found that both vessels were at fault and referred the question of damages to a commissioner. 266 Fed. 570. He reported that there should be awarded on account of the loss of the Proteus $750,000, with interest. The report was confirmed and decree entered, November 28, 1922. 285 Fed. 617. Petitioner and Southern Pacific Company appealed; the Director General did not appeal. The petitioner maintained that the Cushing was not at fault and sought reversal on that ground. The Southern Pacific Company contended

that the commissioner's valuation of the Proteus was too low. The Circuit Court of Appeals affirmed the fault of the Cushing and held that the value of the Proteus at the time of the collision was $1,225,000; and the decree of the District Court was modified accordingly. 292 Fed. 560. The petition to this Court for a writ of certiorari alleges that at the time of the collision the Proteus was under the sole control of the Director General of Railroads, and that, if the vessel had not been lost, it would have continued in his control until March 1, 1920; that the claim of the Southern Pacific Company was against the Standard Oil Company and the Director General, who were joint tortfeasors causing the loss of the Proteus, and that, after the expiration of the term of the Circuit Court of Appeals, petitioner learned that a final settlement had been made between the Southern Pacific Company and the Director General, by which the liability of the latter for the loss of the Proteus was satisfied by payment of $750,000 or by adjustment and settlement on that basis. And the petition asserts that thereby any claim of the Southern Pacific Company against petitioner was extinguished, because a settlement with one joint tortfeasor precludes recovery from the other for the same loss. The petition was granted. 263 U. S. 696. Later, the order granting the writ was vacated as to personal injury, cargo and passenger claimants against whom no error was assigned. 263 U. S. 681. By leave of this Court, additional testimony relating to the settlement was taken in accordance with paragraph 2 of rule 12. 265 U. S. 569.

The material facts may be briefly stated. December 28, 1917, the President took over the combined rail and water transportation system of the Southern Pacific Company and its subsidiaries. February 19, 1919, the Director General and the owner made a contract in respect of the operation and upkeep of the properties and for the compensation to be paid for their use during federal control. By it, the Director General was required to pay for

property destroyed and not replaced. December 19, 1922, final settlement under the contract was made. The total amount of all items claimed by the company was $54,252,-694.57. There was paid $9,250,000 as a lump sum; and that was accepted in full satisfaction of all claims, with certain exceptions not here material. The company claimed $1,268,090.26 for the Proteus and $16,663.80 for the lighter Confidence. The Railroad Administration kept a record showing how the lump sum was arrived at. In this record there was allocated on account of the Proteus and the Confidence a lump sum of $885,000, but this was not in any wise communicated to the company. There was no agreement as to the value of the Proteus or as to the amount included in the lump sum on account of her loss or on account of any other item. On the facts disclosed, it is impossible to attribute to her loss any particular amount.

The rule of the common law that one who is injured by a joint tort and accepts satisfaction from one of the wrongdoers cannot recover from the other does not apply. By reason of the immunity of the United States from suit, the Southern Pacific Company did not have the same remedy against the Director General that an owner would have against a private charterer. Waiver of sovereign immunity from suit was not broad enough to permit an action in tort by the company against the Director General for the loss of the Proteus. See § 10, Federal Control Act, c. 25, 40 Stat. 456; *Dupont de Nemours & Co.* v. *Davis,* 264 U. S. 456, 462; *Missouri Pacific R. R.* v. *Ault,* 256 U. S. 554. In respect of that, there was no breach of duty owed to the respondent by the Director General as a common carrier. As was said in *The Western Maid,* 257 U. S. 419, 433, " The United States has not consented to be sued for torts, and therefore it cannot be said that in a legal sense the United States has been guilty of a tort." At the time of the collision, the Director General was a special owner having exclusive possession and con-

trol of the vessel; the Southern Pacific Company was the owner of the reversion. Together they had full title, and joined in the petition for limitation of liability. Adjustment of their interests under the contract could be made before as well as after the end of litigation. No question of tort or negligence on the part of the Director General was involved. The settlement had no relation to the wrongful act of petitioner and did not affect its liability. *Ridgeway* v. *Sayre Electric Co.,* 258 Pa. 400, 406. Petitioner is not entitled to dismissal as against the Southern Pacific Company. Nor is the Director General bound by the decree of the District Court as to the amount of damages. On appeal in admiralty, there is a trial *de novo.* The whole case was opened in the Circuit Court of Appeals by the appeal of the Southern Pacific Company as much as it would have been if the Director General had also appealed. *Reid* v. *American Express Co.,* 241 U. S. 544; *Watts, Watts & Co.* v. *Unione Austriaca,* 248 U. S. 9, 21; *The John Twohy,* 255 U. S. 77; *Munson S. S. Line* v. *Miramar S. S. Co.,* 167 Fed. 960. And see *Irvine* v. *The Hesper,* 122 U. S. 256, 266.

It is fundamental in the law of damages that the injured party is entitled to compensation for the loss sustained. Where property is destroyed by wrongful act, the owner is entitled to its money equivalent, and thereby to be put in as good position pecuniarily as if his property had not been destroyed. In case of total loss of a vessel, the measure of damages is its market value, if it has a market value, at the time of destruction. *The Baltimore,* 8 Wall. 377, 385. Where there is no market value such as is established by contemporaneous sales of like property in the way of ordinary business, as in the case of merchandise bought and sold in the market, other evidence is resorted to. The value of the vessel lost properly may be taken to be the sum which, considering all the circumstances, probably could have been obtained for her on the date of the collision; that is, the sum that in all proba-

bility would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy. *Brooks-Scanlon Corporation* v. *United States,* 265 U. S. 106, 123. And by numerous decisions of this Court it is firmly established that the cost of reproduction as of the date of valuation constitutes evidence properly to be considered in the ascertainment of value. *Southwestern Bell Telephone Co.* v. *Public Service Commission,* 262 U. S. 276, 287, and cases cited; *Bluefield Co.* v. *Public Service Commission,* 262 U. S. 679, 689; *Georgia Ry. & Power Co.* v. *Railroad Commission,* 262 U. S. 625, 629; *Brooks-Scanlon Corporation* v. *United States, supra,* 125; *Ohio Utilities Company* v. *Public Utilities Commission,* 267 U. S. 359. The same rule is applied in England. *In re Mersey Docks and Admiralty Commisisoners* [1920], 3 K. B. 223; *Toronto City Corporation* v. *Toronto Railway Corporation,* [1925] A. C. 177, 191. It is to be borne in mind that value is the thing to be found and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts. *Minnesota Rate Cases,* 230 U. S. 352, 434.

The Proteus was a steel passenger and freight steamship, built in 1900 for use in the Southern Pacific Company's service between New York and New Orleans. Her original cost was $557,600. In 1909, she was reboilered and otherwise improved at a cost of $90,000. The evidence shows that she was unusually well kept and in excellent condition for use. The District Court found that in 1917 and 1918, on account of unprecedented demand and a shortage of shipbuilding facilities, the market value of ships was higher than the cost of construction; and also found that in 1918, when the Proteus was lost, the cost of construction was approaching the peak which came some months later. 285 Fed. 619, 620. Respondents

called three witnesses experienced in shipbuilding and familiar with construction costs and value of ships in 1918. Each made an estimate of the cost of reproduction of the Proteus as of the date of the loss. Their estimates were respectively $1,755,450, $1,750,000 and $1,750,000. One of these witnesses and two others called by respondent testified respectively that in 1918 the value of the Proteus was $1,225,000, $1,297,637 and $1,350,000. The petitioner called a mechanical engineer and naval architect connected with its construction department, who testified that the cost of reproduction of the Proteus in 1918 would have been three times its original cost or approximately $1,670,000. It called two other witnesses, who had been members of a government board of appraisers for the determination of just compensation for vessels requisitioned. They expressed the opinion that the cost of reproduction of the Proteus in 1918 would have been two and a half times its original cost or approximately $1,400,000. But they made no detailed estimates. The figures were arrived at by examination of statistics showing labor and material costs. These three witnesses testified respectively that at the time of the loss the value of the ship was $630,000, $650,000 and $611,000.

In view of changed prices, the original cost of the vessel was not useful as a guide to her value when lost. In *The Clyde,* 1 Swabey 23, Doctor Lushington, speaking of what a vessel would fetch in the market, said (p. 24): "In order to ascertain this, there are various species of evidence that may be resorted to—for instance, the value of the vessel when built. But that is only one species of evidence, because the value may furnish a very inferior criterion whereby to ascertain the value at the moment of destruction. The length of time during which the vessel has been used, and the degree of deterioration suffered, will affect the original price at which the vessel was built. But there is another matter infinitely more important than this—known even to the most un-

learned—the constant change which takes place in the market. It is the market price which the Court looks to, and nothing else, as the value of the property. It is an old saying, ' The worth of a thing is the price it will bring.' " And see *City of Winona* v. *Wisconsin-Minnesota Light & Power Co.*, 276 Fed. 996, 1003.

*Restitutio in integrum* is the leading maxim applied by admiralty courts to ascertain damages resulting from a collision (*The Baltimore, supra,* 385), and on the same principle, value is the measure of compensation in case of total loss. The evidence requires a finding that, as of the date of her loss, the cost of reproduction new of the Proteus was not less than $1,750,000. Ordinarily, contemporaneous cost of construction would be a good indication of the amount of damages resulting from the loss of a new ship. There ought not to be any difference between reasonable original cost and estimated cost of reproduction as of the date when built. But the Proteus was 18 years old when lost, and all the witnesses who testified on the subject fixed her value at that time higher than her original cost and lower than the estimated cost of construction. There is no established method or rule for determining the difference between her value at the time of the loss and what her value would have been if then new. It was shown that annual rates of depreciation used in the accounts of shipowners varied from two and a half to five per cent., and that such rates are affected by the policy of the owners, business conditions, taxes and other things. It was not shown whether such deductions covered annual depreciation resulting notwithstanding proper maintenance, or whether they included all or part of the current cost of upkeep. It did not appear whether the rates were applied to reproduction cost or to original cost, or to an amount remaining after deduction on account of scrap value or salvage value or other minimum. In August, 1918, the immediate demand for ships was greater than the supply; the

shipyards were working to full capacity; wages and prices were high; the trend of construction costs was upward, and the element of time was of the utmost importance. And witnesses on both sides testified that such conditions make for a lower rate of depreciation to be taken into account in determining value. If new, the Proteus would have been worth at least her cost of reproduction. Plainly, conditions in 1918 justified a smaller deduction from cost of reproduction new than before the war, and made value of a vessel in good condition and ready for use approach more nearly its value new.

Petitioner's mechanical engineer arrived at $630,000 by taking 34 per cent. of $1,670,000, reproduction cost as found by him, and by making some relatively small adjustments on account of expenditures for maintenance and improvement. He arrived at 66 per cent. deducted, by taking 4 per cent. for 14 years and two and a half per cent. for four years, making an average of over 3.6 per cent. The two other witnesses called by petitioner arrived at $650,000 and $611,000 respectively, by taking 45.2 per cent. of $1,400,000, reproduction cost found by them, and by making similar adjustments. They arrived at 54.8 per cent. deducted, by the use of a depreciation table prepared by another member of the board of appraisers. This table applies to steel steamers in salt water service. It is based on a life of 40 years. It makes a different deduction for each year. For the first 20 years it takes off 60 per cent. and for the last, 40 per cent. The average annual rate is two and a half per cent. The evidence showed that the useful life of such a vessel is not any fixed number of years, but varies greatly, depending on upkeep and maintenance. The table was intended to reflect average conditions of the different depreciable elements of ships of that class and to guide to average values over extended periods, including times of depression as well as of prosperity. The value fixed by each of petitioner's witnesses is more than $1,000,000 less than the

reproduction cost. The rate of depreciation taken by petitioner's mechanical engineer is too high in view of the conditions prevailing at the time of the loss. The other witnesses based their calculation on a reproduction cost that was too low. Moreover, certain valuations made by the government board of appraisers of which they were members seriously impair the weight of their testimony. In 1917, the United States requisitioned the Havana and the Saratoga, vessels of the same type as the Proteus and about one and a half times its size, and constructed in 1906. Cramps estimated reproduction cost of each in 1917 to be $3,000,000, about three times original cost. The board fixed value at $2,240,000 each, about 74 per cent. of reproduction cost. But the value of the Proteus as given by these witnesses was less than 38 per cent. of her cost of reproduction new.

We think the commissioner and District Court failed to give due regard to construction costs, conditions, wages and prices affecting value in 1918; and that the evidence sustains the decree of the Circuit Court of Appeals.

*Decree affirmed.*

MR. JUSTICE SUTHERLAND took no part in the hearing or decision of this case.