## THE RUTHIE M.

## THE FLORENCE M.

## THE S. L. CROSBY.

### THE CITY.
#### No. 12896.

District Court, E. D. New York.
June 8, 1933.

Purdy & Purdy, of New York City (John E. Purdy, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for claimant.

GALSTON, District Judge.

Exceptions have been filed to the report of the commissioner as to the amount of libelant's damages to the coal barges Ruthie M. and Florence M. These exceptions rest generally on the ground that the allowances recommended are in excess of the market value of the two barges at the time that the injuries were sustained.

On October 23, 1931, these barges were lying moored alongside of a bulkhead in the East River. As a result of the negligence of the S. L. Crosby and the barge City, the libelant's barges were torn from their moorings and sustained the damages in question.

There is no issue raised concerning the necessity for the repairs nor that the sum expended in making them was a fair and reasonable amount. These amounted, in the case of the Florence M., to $1,983.69, and for the Ruthie M., to $2,174.89.

That a claim for damages to a vessel, except in most unusual circumstances, must be limited to the value of the vessel, seems well settled. The Havilah (C. C. A.) 50 F. 331. If the cost of repairing a vessel injured in collision be greater than the price at which a vessel to replace her could be purchased in the open market, obviously such vessel ought to be considered a total loss, and the measure of damages recoverable is her market value, with interest from the time of collision, and incidental expenses. The\Benjamin A. Van Brunt (D. C.) 3 F.(2d) 655. It is fundamental in the law of damages that the injured party is entitled to compensation for the loss sustained. . Where property is destroyed by wrongful act, the owner is entitled to its money equivalent, and thereby to be put in as good position pecuniarily as if his property had not been destroyed. In the case of the total loss of a vessel, the measure of damages is its market value, if it has a market value at the time of destruction. Standard Oil Co. v. Southern Pacific Company, 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890.

The libelant established its prima facie case by proof of the extent of the damage and the cost of repairs. The burden was then placed on the claimants to show that such damages exceeded the fair market value of the coal barges. The commissioner found that the claimant failed to sustain such burden, and a careful review of the evidence confirms that view.

The witness Jeremiah J. Kelly, called by the claimant, testified that he had purchased the two barges from the libelant on June 13, 1932, for $1,750. This, it may be noted, was after the collision and subsequent also to the making of the repairs. Were this testimony to stand alone, it would raise serious doubts as to the reasonableness of the libelant's claim. However, it does not stand alone, for it appears that the contract of sale, in addition to the cash payment of $1,750, provided that the purchaser was to carry coal for the libelant at 3 cents per ton less than the prevailing freight rate. This was a substantial allowance, for the average annual tonnage carried for the libelant was 125,000 tons. It was therefore entirely proper for the commissioner to reject $1,750 as the purchase price of the two boats, though it may be noted that the contract itself I do not find in evidence, and it does not appear for how long a period the claimant was to have such beneficial freight rate as was indicated.

The witness Kelly also testified that he had in 1932 purchased nine other coal boats. These had belonged to the Tice Towing Line. They were in poor condition, and only some of them were usable. A total of $4,000 was paid for the nine boats. The testimony concerning them is very vague as to tonnage. Kelly said they ran from 500 to 800 tons. If Kelly based his opinion on the sale of the Tice boats, it seems to me that hardly any weight can attach to his conclusion that $1,750 represented more than the Florence M. and the Ruthie M. were worth.

Cummings was a little more convincing. This witness testified to the sale of thirteen boats by the Pennant Line in May, 1929. The boats were in very poor condition, and were purchased for the purpose of using them as "fill." Most of them were not in usable condition. He testified also to a sale of the Berwind-White boats in December, 1929, and to a sale of nine coal boats by the United States Navy in 1930. The sale price of these Navy boats was for a lump sum which averaged $1,550 for each boat. He referred also to sales in 1931 by the Berwind-White Company, and by the Park Coal Company on June 29, 1931. This latter sale was of thirty-eight boats, of which only three could be operated, and the other thirty-five were sold for bulkheading purposes.

The claimant called also the witness Drum, who testified as a marine surveyor and appraiser. He placed the value of the Ruthie M. in October, 1931, at $400, after she had been repaired. His opinion was in part based on the sale of eighteen barges by the Lehigh Coal & Navigation Company in November, 1931. He was familiar also with the sale of the Berwind-White boats, four in number, to Tracy in December, 1929, and of the Pennant boats in 1929, and the Park Coal Company boats in 1931. It seems that the December sale of the Berwind-White boats was for $2,500 each. The sale of the four boats by the McWilliams Blue Line to Meenan Coal Company in July, 1932, was referred to by this witness. These boats were 850 tons. The boats were in fair condition, and were sold for a lump sum of $2,250.

The fourth witness called by the claimant was William T. Hanley, who also testified as to sales of coal boats.

On the whole, claimant's proofs fall short of a real standard of comparison with the Ruthie M. and the Florence M. The Pennant Line sale was eighteen boats for a lump sum of $1,800. The Park Coal Company sale was

thirty-eight boats for a lump sum of $4,200. There is no testimony as to whether any one of the eighteen boats of the Pennant Line sale or any one of the Park Coal Company sale was as good as either the Ruthie M. or the Florence M. There is no comparison of dimensions; and the fact that the boats were in the main used for "fill" or for bulkheading purposes is significant of their lack of condition as vessels fit for operation.

The Lehigh Valley sale of eighteen boats for the lump sum of $5,000 included those of from 150 to 450 tons and from 50 to 103 feet in length, and there is a notation on the exhibit that the business went with the purchase price. There is no sufficient particularity proved of any one of these boats such as establishes a means of comparison with either of libelant's vessels. As to the vessels included in Hanley's list, only the Crystal, Hunter, Reddy, and Walker need be considered. Each was about twenty years old. These vessels needed repairs. The boats were sold for a lump sum. How they compared with the Ruthie M. and the Florence M. is left a matter of speculation.

The testimony of the claimant's experts is certainly not convincing. How true this is is indicated, perhaps, by the extraordinary divergence of opinion of Drum and Cummings as to the value of the Ruthie M. and the Florence M. They were almost 100 per cent. apart; that is, the former placed $400 as the value of each boat, and the latter, $750.

On the other hand, I agree with the commissioner that the testimony of the libelant's witnesses is much more persuasive. De Mars, who was familiar with the boats, stated that they were between eighteen and nineteen years old; that they had been receiving good care. He estimated the boats to be worth, $3,500 for the Florence M., and $3,200 for the Ruthie M., not on what he knew had been spent by way of repairs, but on his knowledge of the condition of the boats and market conditions. This witness was familiar with the Berwind-White boat sales, and spoke of the custom of that company to sell their boats after they had been in service for twenty years. Such boats make from three to five trips a week with loads of coal, and are subjected to hard usage. They are a smaller type boat than the Ruthie M. and the Florence M. The Park Coal Company boats he knew to be in bad shape, and were fit only for use as "fill."

In conclusion, therefore, I find that the commissioner has very carefully analyzed the evidence; and his report, in accordance with the foregoing view, is in all respects confirmed.

The exceptions are therefore overruled.

Settle order on notice.