Whaley, Judge,
delivered the opinion of the court:
The plaintiff brings this action to recover for the total loss of its steamer the Thomas B. Bucleha/m^ which was chartered to the Mississippi River Commission on April 18, 1927, and which steamer met with an accident near Simmesport on the Atchafalaya River on May 21, 1927, and sank, becoming a total loss. In this feature of the case the suit is brought in the name of the National Box Company for itself and the underwriters who had issued the insurance policies and who had paid the amounts called for in these policies on the loss of the steamer. There is a second feature of the case in which the plaintiff claims the difference between the actual value of the steamer on the day of the loss and the amount for which it was insured.
The facts in the case show that during the flood conditions prevailing on the Mississippi River and its tributaries during the spring of 1927, the Mississippi River Commission entered into a lease with the plaintiff whereby it was agreed that the plaintiff would furnish its steamer, the Thomas B. Buohham, to the Mississippi River Commission at the rate of $75 per day, the plaintiff furnishing and paying the captain and engineer and the Commission paying all other members of the crew and the expenses. The lease provided the towboat should be used in the Mississippi River between Vicksburg and the mouth of the Red River for levee protection services and continue to be used during the period of high water or until the Commission’s boat was repaired, or the plaintiff required the use of its own boat in its own service. There was a further condition that, in case of loss or damage, the Mississippi River Commission would be responsible only for such loss or damage over and above the amount of the insurance carried on the boat which was fixed at the sum of $30,000. The evidence shows that on or about the 20th day of May the emergency work on the Mississippi River having been completed between Vicksburg and the mouth of the Red River, an emergency had arisen on the Atchafalaya River which required the services of the towboat. Capt. Geddes, who was the Army engineer in charge of the Vicksburg district, got in touch with Mr. Perry, the manager of the National Box Company, over the telephone, *172 and, as a result of this conversation, it was agreed that the Thomas R. Bwchham should proceed down the Atchafalaya River under the terms and conditions of the lease, but with the further condition that the Government would furnish a pilot acquainted with the waters on which the services of this boat were required. Capt. Geddes died a few months after the happening of these events and some years before the evidence in this case was taken. The testimony of the captain who was the representative of the owners clearly shows that he was ordered by Mr. Perry, as a result of his conversation with Capt. Geddes, to take the boat down the Atchafalaya River, and, ivhen the pilot took charge of the boat, the captain remained in the pilot house and made no protest. Mr. Perry’s testimony consists of a vague recollection of what happened over the telephone between Capt. Geddes and himself in reference to this new arrangement, but five days after the towboat had become a total loss, he, as manager of the National Box Company, wrote to the Mississippi River Commission advising them of the loss of the Thomas R. BuoMiam, where she ivas lost, and that she was under charter at the time. In this letter he only claimed the difference in the value of the towboat at the time of its loss and the amount of $30,000 insurance carried on the boat. We mention this to show that, if there had been any deviation from the terms of the charter as agreed upon between Capt. Geddes and himself, there would have been, while it was fresh in his mind, a statement to that effect. We are satisfied from all evidence in the case that an agreement had been reached before the towboat was sent into the tributaries of the Mississippi and that the Government is not responsible for more than the excess of the value of the boat over the amount of the insurance collected.
It may be well to mention here that the policies of insurance covered the use of the towboat on the Mississippi River and all its tributaries. The plaintiff has been paid by the insurance companies the full amount of the policies.
Under the terms of the lease, the plaintiff is entitled to recover any excess in the value of the boat over the insurance of $30,000 collected. The evidence shows that there was no market value at or near the place where the towboat was *173 lost. There was a market value at some distant points but the few sales which had been made and the nature of the evidence of these sales, in our opinion, are not sufficient to establish a market value. It is therefore necessary to resort to other methods of ascertaining the value. The cost of reproduction as of the date of the loss constitutes evidence properly to be considered in the ascertainment of the value. The testimony shows a wide range as to reproduction costs. The variation is from approximately $20,000 to $55,000. Such evidence is not satisfying or conclusive enough to constitute the reproduction value of the vessel in place of the market value. There has also been taken evidence of the cost less depreciation of the vessel including repairs and maintenance. The original cost in 1917 of the Thomas B. Buckham was $18,500 which was composed of $16,000 for the hull and $2,500 for second-hand machinery. During her seven years of use, repairs and replacements during this period brought the total sum to $30,310.58, which, with the depreciation of 3%% per annum, would have made her cost, less depreciation value on the date of her loss, $28,816.14. Her reproduction cost, less depreciation, would have amounted to $30,666.67. Neither one of these formulas for computing the value as of the date of loss is sufficiently satisfactory to take the place of market value which is lacking, nor sufficient by itself to establish the true value.
In Standard Oil Co. v. Southern Pacifuc Co., 268 U. S. 146,156, the Supreme Court holds:
“ It is to be borne in mind that value is the thing to be found and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts.”
We feel that, taking all relevant facts into consideration, the true value of the vessel when lost may be taken to be the sum of $27,250, and no more than that sum could have been obtained for her on the day of destruction.
Having found that the value of the Thomas B. Buelcham on the date of the loss was less than the amount of the insur- *174 anee carried and collected, and there being no excess, there is nothing for the plaintiff to recover and the petition is dismissed.
It is so ordered.
Williams, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.