Jones, Chief Judge,
delivered the opinion of the court:
This case involves the value of the vessel President War-field, her equipment and furnishings, on July 12, 1942.
On July 12, 1942 the War Shipping Administration requisitioned the vessel, pursuant to Section 902 of the Merchant Marine Act of 1936, as amended, 53 Stat. 1255, and Executive Order 9054, 7 Fed. Beg. 837, and took possession thereof, together with her equipment and furnishings. On July 3, 1945 the Administrator of the War Shipping Administration determined that just compensation for the President War-field was the sum of $525,000, plus an allowance for delay in payment calculated at the rate of % of 1% per annum from July 12, 1942, to June 29, 1945.
The offer of payment on this basis was rejected. The plaintiff was paid 75% of the administrator’s determination and now sues for the value of the vessel less the amount of the payment made.
*477 Plaintiff asserts that the value of the vessel requisitioned was, at the time of the taking, $1,934,905, and it sues for that amount plus interest at the rate of 6% per annum from the time of the taking, less credit for the amount of the payment already made.
The President Warfield is a combination freight and passenger vessel with a steel hull and wooden superstructure. She was built in 1928. A description of the vessel is set out in finding 4. She had 161 saleable staterooms and was licensed to carry from 412 to 592 passengers, depending on the season of the year. She was classified by the American Bureau of Shipping with the highest rating given by the Bureau for this class of vessel. Throughout the entire period of operation she had been carefully maintained and was in excellent condition when requisitioned. She had an easy sheltered run in the Chesapeake Bay between Baltimore and Norfolk, being subjected to less wear and tear than had she been operating on the high seas. She had a remaining probable useful life in the service in which she had been operating of at least 26 years.
The original cost of the vessel was $959,970.97, including furnishings. Additions and betterments were made after her construction and prior to the date of requisition at a cost of $43,146.
At the time of the taking plaintiff was carrying insurance on the President Warfield in the sum of $1,000,000. From 1937 to June 20, 1941 it was insured for $900,000.
The ship had been designed especially for the Baltimore-Norfolk trade and varied in design and size from other types of river and harbor boats. There were no sales of vessels of comparable size, age and characteristics in 1940, 1941 or 1942 upon which a market price can be established. The demand for cargo vessels off all kinds in the year 1942 was abnormal and had there been no Government restrictions on sales, the President Warfield could have been sold for more than its sales price would have been in ordinary times.
Defendant took possession of the vessel’s hotel equipment when it requisitioned the vessel. The equipment had been kept in good and serviceable condition, items being replaced *478 from timé to time, and when requisitioned was adequate to serve the needs for which it was originally purchased. The original cost of this equipment was $41,536.06. The only specific evidence which tends to reflect the market value of such equipment at the time of the taking was that of one witness who, in arriving at his aggregate appraised value of the entire vessel, included the cost price of the hotel equipment and subjected it to the rate of depreciation he applied to the reproduction cost of the vessel. We believe that the original cost of such hotel equipment depreciated at the rate hereinafter found appropriate represents the value of such equipment on the date of the taking as disclosed by the available testimony in the record.
After the ship was constructed and in operation, the rules and regulations governing the construction and operation of ships were changed to require certain safety features in the construction of ships. These rules applied only to new vessels and the President War-field was not required to and had not undergone alterations incorporating these features. To have reproduced the President Warfield at the shipyard as of July 12, 1942, without hotel equipment and without the additions and betterments mentioned above, would have cost $1,667,042. The additional cost of incorporating the changes necessary to comply with the new rules and regulations would have been approximately $524,424.
The appraisals of the experts who gave their opinions as to the value of the vessel and equipment at the time of the taking varied widely.
The method of reaching our conclusion as to the value of the President Warfield and her equipment and furnishings at the time of the taking is the same as that used in the case of Baltimore Steam Packet Co. v. United States, No. 47090, this day decided, in which the value of a companion vessel, the State of Virginia, was determined. The witnesses were the same, she was a companion vessel, and a description of that method will not be repeated here.
Considering the entire record we find that the fair and reasonable value of the President Warfield on July 12, 1942 was $990,000. Plaintiff has been paid the sum of $393,750, *479 together with $10,213.23 on account of delay in payment to June 29, 1945. Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 156; Seven-Up Bottling Co. v. United States, 107 C. Cls. 402, 404.
Plaintiff is entitled to recover $596,250 with interest at the rate of 4% per annum from November 14, 1945, to date of payment. Plaintiff is also entitled to recover interest at the rate of 4% per annum on $990,000 from July 12, 1942, to November 14, 1945, less a credit of $10,213.23, the amount paid by the Government on November 14, 1945, as compensation for delay in payment to June 29, 1945. These items of interest are allowed not as interest but as a part of just compensation.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitakek, Judge; and LittletoN, Judge, concur.