In the Matter of CROUNSE CORPORATION, as Owner of Barge C512.

TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

VULCAN MATERIALS COMPANY, et al., Defendants.

No. 94–3066–D/A.

United States District Court, W.D. Tennessee, Western Division.

Dec. 20, 1996.

1378

## ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DEPRECIATION

DONALD, District Judge.

This matter is before the Court, sitting in admiralty pursuant to 28 U.S.C. § 1333, upon the motion of plaintiffs Tennessee Valley Authority, Entergy Services, Inc., Arkansas Power & Light Company, and Mississippi Power & Light Company (collectively, "TVA" or "Plaintiffs") for partial summary judgment on the issue of depreciation. Defendants, Vulcan Materials, Inc., Reed Crushed Stone Company, Inc., Central States Materials, Inc., and Reco Transportation, Inc. (collectively "Vulcan"), and third-party defendant Crounse Corporation (the defendants and the third-party defendant are referred to hereinafter, collectively, as "Defendants") oppose Plaintiffs' motion in separate memoranda. The case fits within the provisions of Rule 9(h) of the Federal Rules of Civil Procedure (FED.R.CIV.P.), describing admiralty and maritime claims.

## FACTS

For the limited purpose of this summary determination, the Court considers the following facts. On the morning of December 24, 1992, the Crounse tug M/V HAZEL delivered nine Crounse barges loaded with crushed rock to the Vulcan fleeting facility, immediately upriver of the Vulcan material yard, between mile points 733 and 734 on the Lower Mississippi River, where Vulcan maintained wire cables and soft line for use in tying off barges. The crew of the HAZEL moored its tow to the left descending bank. On December 25, 1992, at approximately 4:00 a.m., the Vulcan towboat M/V VALERIE J inspected the Crounse barges. Shortly after midnight on December 26, 1992, several Crounse barges were sighted drifting downriver of the Vulcan fleeting facility. A rescue operation resulted in the recovery of eight of the nine Crounse barges. The ninth Crounse barge (the C512) was not recovered.

Soon after the breakaway, the Coast Guard discovered a sunken barge below the northwest caisson of TVA Tower No. 174, which sits approximately in the middle of the river at mile point 724.6. A further inspection of Tower 174 revealed that the tower was damaged. The top of the northwest caisson, one of four steel reinforced concrete caissons supporting the tower, was displaced to the southeast by approximately 3½ feet. In addition, damage occurred to the steel tower atop the caissons to a height of 90 feet above the waterline.

Tower 174 was built in 1931 to carry two 110 kV lines, and originally stood on the east side of the Mississippi River. The design allowed for the anticipated change in course of the river. In the 1950's, the river channel was redirected from the west side of the tower to the east side, surrounding the tower with water. In 1964, Tower 174 was modified to carry a larger, single 500 kV line. An internal memorandum from January of 1965, shows that Plaintiffs were aware of the danger posed to Tower 174 by barges. Also in 1965, TVA recognized problematic deterioration to concrete caissons supporting Tower 174.

In 1984, a barge struck the northeast caisson of Tower 174, displacing it at its top approximately 13 inches to the southeast and causing considerable damage to lower portions of the tower. Efforts to correct the 1984 displacement failed, and TVA instead modified the lower steelworks to restore symmetry to the tower. In late–1991, TVA undertook to renovate portions of the tower.

Following the collision giving rise to the instant matter, TVA commissioned no fewer than two independent studies of the structural integrity of Tower 174. After an assessment of its options, TVA decided to re-route the crossing to eliminate the necessity of having a tower in the middle of the river. A new crossing was completed in 1995, approximately five miles south of the old crossing, and Tower 174 was razed in the autumn of 1996.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). When read in conjunction with FED.R.CIV.P. 56(a), subsection (d) allows the claimant to seek partial summary judgment on "the extent to which the amount of damages or other relief is not in controversy." FED.R.CIV.P. 56(d). Partial summary judgment is appropriate to isolate and dispose of factually unsupported claims or defenses, and FED.R.CIV.P. 56 should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment may be discharged by pointing out that there is an "absence of evidence to support the nonmoving party's case."

*Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553). The Court may also consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2721, at 40, § 2722, at 56 (2d ed. 1983).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

Viewed in the light most favorable to the nonmoving parties, *Kochins,* 799 F.2d at 1133, the facts and reasonable inferences show that a collision occurred between a runaway barge and the northwest caisson of Tower 174 in late December of 1992. Shortly thereafter, divers located a sunken barge under the northwest caisson of Tower 174. The barge found at the northern base of Tower 174 is of the same size and type as the missing C512, although no positive identification could be made. The collision, which was not witnessed, caused extensive damage to Tower 174. Prior to the 1992 collision, Tower 174 had been struck by a runaway barge at least once before—in 1984.

This is a case without clear precedent in the Sixth Circuit. The issue has been extensively briefed by both parties. For the limited purpose of adjudicating the Plaintiffs' motion for partial summary judgment, the Court will assume that the barge found beneath Tower 174 is the missing C512, and that the C512 collided with the northwest caisson Tower 174 in late December of 1992. The Court has thoroughly examined the record in this case and has conducted an exhaustive review of applicable case law. For the following reasons, the Court hereby DENIES Plaintiffs' motion for partial summary judgment.

## DAMAGE AND VALUATION

■ *Restitutio in integrum* [1] is the leading maxim applied by admiralty courts to ascertain damages resulting from a collision. *The Baltimore,* 75 U.S. (8 Wall.) 377, 385, 19 L.Ed. 463 (1869). Where repairs are practicable, the tortfeasor is liable in the amount sufficient to restore the damaged structure to its condition immediately prior to the accident. *The Baltimore,* 75 U.S. 377, 385, 19 L.Ed. 463 (1869); *accord Hewlett v. Tug Evelyn,* 283 F.Supp. 917, 919 (E.D.Va.1968) (where repairs are practicable and damage does not constitute constructive total loss, restitution by way of the cost of repairs is the general rule of damages). The measure may also be enunciated as the difference in the value of the damaged property immediately before and after the accident. *The Pocahontas,* 109 F.2d 929, 931 (2nd Cir.1940).

1. "Restoration to the previous condition." BLACK'S LAW DICTIONARY (6th ed. 1990). "Restoring to whole." WEBSTER'S II NEW COLLEGE DICTIONARY (1995).

■ Value is the measure of compensation in case of a total loss. *Standard Oil Co. of New Jersey v. Southern Pac. Co.*, 268 U.S. 146, 158, 45 S.Ct. 465, 468, 69 L.Ed. 890 (1925). A total loss may mean a constructive total loss or an actual total loss. *Pillsbury Co. v. Midland Enters., Inc.*, 715 F.Supp. 738, 763 (E.D.La.1989). When the costs of repairs to damaged property exceed the pre-casualty value of the property, the damaged property is considered to be a constructive total loss. *Id.* (citing *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 491 (5th Cir.1986)). If the property is damaged beyond physical repair, it is considered an actual total loss. *Id.* (citing G. Gilmore & C. Black, *The Law of Admiralty* § 2–14, at 83 (2d ed. 1975)).

When the damaged structure is deemed a total loss, its value immediately prior to the accident might be higher than the original cost and lower than the cost of replacement. *Standard Oil Co. of New Jersey v. Southern Pac. Co.*, 268 U.S. 146, 157–58, 45 S.Ct. 465, 467–68, 69 L.Ed. 890 (1925) ("In view of changed prices, the original cost of the vessel was not useful as a guide to her value when lost."). Value is, to a great extent, a subjective consideration. *Id.* In *Standard Oil*, the Court instructed:

> It is to be borne in mind that value is the thing to be found, and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts.

*Id.* at 156, 45 S.Ct. at 467.

## BETTERMENT

The replacement of an old structure or vessel may leave the injured party in a better position than it occupied before the accident, at the expense of the tortfeasor. Courts have developed the term "betterment" to describe such an outcome, and to prevent this manner of unjust enrichment, courts have traditionally adhered to judicially-crafted rules. *See, e.g., City of New Orleans v. American Commercial Lines, Inc.*, 662 F.2d 1121, 1124 (5th Cir.1981); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir.1973); *State of Oregon v. Tug Go–Getter*, 468 F.2d 1270, 1273 (9th Cir.1972). The argument for preventing the occurrence of betterment, finding foundation in the Laws of Oléron, art. XIV (c. 1266), is simple and obvious—the application of depreciation to reduce damage awards discourages the purposeful placement of an old and decayed vessel or other object in the way of traffic. *Pillsbury*, 715 F.Supp. at 763–64. If recovery is allowed to better the plaintiff's position, then the waterways will fill with decrepit vessels and other objects whose owners would prey on the negligence of others, hoping to improve the condition of their assets at the expense of tortfeasors. *Cf. id.* at 764, n. 78 (explaining reliance on ameliorative reduction in old line of divided-damages cases). Betterment defies one of the basic principles of tort law, as the court in *United States v. Ebinger*, 386 F.2d 557 (2nd Cir.1967) eloquently concluded:

> The purpose of tort damages is to compensate an injured person for a loss suffered and only for that. The law attempts to put the plaintiff in a position as nearly as possible equivalent to his position before the tort. Recovery is permitted not in order to penalize the tortfeasor, but only to give damages 'precisely commensurate with the injury.'

*Id.* at 561.

■ The new-for-old rule is a well-tested application of the doctrine against betterment. *Pillsbury*, 715 F.Supp. at 764; *see also Tug Go–Getter*, 468 F.2d at 1273 ("The 'new-for-old' rule seeks to avoid giving the injured person the windfall of providing him with a new replacement for that which was old and depreciated and would in normal course have to be replaced in any event."). Where repair or replacement costs form the basis of a damage award, the Court must determine whether the repair or replacement adds new value to or extends the useful life of the property. *Pillsbury*, 715 F.Supp. at 764. If the Court determines that repair or replacement adds new value to or extends the useful life of property, then an appropriate reduction from the full repair or replace-

ment costs should be made. *Id.* In its analysis, the Court must determine what the expected useful life of the property was immediately prior to the casualty and what the expected useful life of the repaired or replaced property would be, prior to making a determination for or against reduction under the "new-for-old" rule. *Id.* If the Court decides that the new property provides the injured party with a windfall, then the Court should reduce any recovery assessed against the tortfeasor in an amount sufficient to account for any prior depreciation and to offset any anticipated betterment. *Id.*

The doctrine against betterment does not always get a warm reception under the totality of facts and circumstances in a case. The proposition that a defendant might be allowed a abatement of damages when its negligence invited a crisis into the injured party's world is neither fair nor equitable when the injured party was compelled to replace the damaged property prematurely as a result of the tortfeasor's negligence. *See J.W. Paxson Co., v. Board of Chosen Freeholders,* 201 F. 656 (3rd Cir.1912).

In *Paxson,* a tug negligently ran its tow into a drawbridge, totally destroying the bridge's eastern span, and nearly destroying a fender. The plaintiff contracted to have the bridge's eastern span rebuilt and a new fender installed. Opposing the plaintiff's suit to recover the full costs of repair and replacement, the defendant argued that the provision of the new span and new fender put the plaintiff in a better position than it was in prior to the accident. The court of appeals affirmed the district court's determination of damages relating to the new span, explaining:

> The plaintiff was compelled, by the negligence of the defendant, to build a new structure, which, as a new structure, was possibly, though not certainly, more valuable than the old one. But the old structure sufficed for the purposes of the plaintiff, and the plaintiff was damaged by being compelled to procure a new structure in place of the old one, for the contract price of which it was obliged to pay. The sufferer by the negligence of the defendant cannot be compelled to perform

the impossible task of re-creating the old span, without buying a new one, or make a nice computation of the difference in value between the old one and the new. The plaintiff did not need a new span. The old one was sufficient, and the county was damaged by being compelled to incur the cost of a new one.

*Id.* at 663; *cf. Ebinger,* 386 F.2d at 561 ("the plaintiff should not be required to finance in part the premature replacement of equipment when there is no assurance that this will add to the realizable value of the property to which it appertains"). In *Paxson,* however, the district court expressed serious doubt that the new bridge span was as good as the old bridge span. *Id.* at 662. The court of appeals agreed that the new fender provided the plaintiff with a boon, and affirmed the abatement of damages in order to offset this betterment. *Id.*

■ Where the court determines that the useful life expectancy immediately prior to the accident is indefinite, abatement is inappropriate. *M/V Elaine Jones,* 480 F.2d at 27. Moreover, the tortfeasor is not entitled to a credit merely because the plaintiff has acquired a new unit, presumably with a longer life expectancy than the old, if that was the cheapest course available. *Ebinger,* 386 F.2d at 560–61 (2nd Cir.1967).

■ When the damage is to an integral part of a structure, not a separate part which through normal wear would require independent replacement during the life of the structure, then the new-for-old rule does not apply, *vis-à-vis* the repair or replacement of the integral part. *Tug Go–Getter,* 468 F.2d at 1274. Courts have recognized that repair to an integral part of a structure tends not to add to the life expectancy of the entire structure. *E.g., Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300, 305 (5th Cir.1976); *see also Tug Go–Getter,* 468 F.2d at 1274 (the repair or replacement of an integral part adds nothing of substance to the value of the structure as a whole, and the life expectancy of the entire structure has not been extended). Savings on maintenance expenses, however, should be credited to the tortfeasor, the amount deductible not to exceed the capital-

ized value of the property. *Ebinger*, 386 F.2d at 561.

## APPLICATION OF THE LAW TO THE FACTS

In the case *sub judice*, the facts show that a barge, which Plaintiffs assert is the C512 and Defendants deny, collided with the northwest caisson of Tower 174, causing damage to the northwest caisson of the tower and to the steel girding of the tower to a height of 90 feet above the waterline. Plaintiffs rightfully argue that the northwest caisson is an integral part of the Tower 174, as are the damaged steel members. Plaintiffs also assert that Tower 174 is an integral part of the river crossing at mile point 724.6 of the Mississippi River, and an integral component "of a vast electrical pipeline owned by [TVA]." TVA's Memorandum in Support of Motion for Partial Summary Judgment on the Issue of Depreciation, Docket No. 57, p. 15. Plaintiffs claim that "[w]hen and if the crossing's useful life is over, the entire structure will be retired, including all components such as hundreds of other towers." *Id.* (emphasis in original).

Plaintiffs do not attempt to induce the Court to believe that Defendants are liable for the repair or replacement of the entire network of electrical transmission lines merely because a caisson on one tower might have been damaged by Defendants' negligent acts and omissions. Plaintiffs specifically ask that the Court rule pursuant to FED.R.CIV.P. 56(a) and (d) that, in the event Defendants are found liable, Defendants are not entitled to any reduction in damages based on depreciation.

Defendants, without conceding liability, allege that Plaintiffs occupy a substantially better position after the accident that they occupied before the accident, to wit:

(1) Plaintiffs have a new river crossing without a tower in the Mississippi River, eliminating the risk of shipping accidents such as the one in this case.

(2) Plaintiffs have a new tower in the place of a 65 year-old tower which had an extensive record of damage and deterioration.

Accordingly, in the event that the Plaintiffs were entitled to an award of damages in this case, Defendants posit that such potential recovery might be subject to abatement under the new-for-old rule or any other appellation of the doctrine against betterment. Defendants assert that the possibility of the Court's abating a potential money judgment is sufficient to overcome Plaintiffs' motion for summary judgment.

■ This matter is not suitable for partial summary determination pursuant to FED. R.CIV.P. 56(d). There are genuine issues of fact to be tried, e.g.:

(1) whether the damage resultant from the collision in question rendered Tower 174 an actual or constructive total loss; and,

(2) whether Tower 174, *in toto*, was so decrepit, deteriorated, or otherwise damaged prior to the accident, that to deny abatement would engender betterment at the expense of the alleged tortfeasor.

The intent of FED.R.CIV.P. 56(d) is to specify those facts which are uncontroverted and to narrow the scope of the trial, where practicable. 10A FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2737. In this case, no rationale exists to narrow the case on this issue, because valuation is essential, and necessarily involves "a reasonable judgment having its basis in a proper consideration of all relevant facts." *Standard Oil*, 268 U.S. at 156, 45 S.Ct. at 467. The relevant facts concerning the extent of prior damage to the tower, the life expectancy of the tower prior to the accident, and the decision to destroy the tower and build a new crossing, are contested and are in issue.

The Court directs the parties' attention to an admiralty case from the Eastern District of Pennsylvania, *Patterson Terminals, Inc. v. S.S. Johannes Frans*, 209 F.Supp. 705 (E.D.Penn.1962). In *Patterson*, two tugs sought to assist a vessel into berth at the plaintiff's pier. The vessel, through its own negligence and aided by the negligence of the tugs, collided with the pier and caused extensive damage to one of its caissons. The defendant vessel was found liable due to its negligence, but the court then abated the damages to offset betterment in the repair of

1384

the pier. Although the damaged caisson was not considered integral to the pier, the court's analysis *vis-à-vis* abatement is still illuminating. The court scrutinized the evidence adduced which showed the indicia of prior damage, and the court concluded that to award the plaintiff an unabated recovery would be the equivalent to taxing the defendant for damage which it did not cause and to bettering the plaintiff at the expense of the defendant. *Id.* at 710–12. The type of fact-intensive analysis in *Patterson* is the same type that the Court may have to apply in the case *sub judice*.

In this case, Plaintiffs do not come forward with evidence that the tower was not a decrepit, deteriorated and damaged structure in need of repair. Defendants do, however, present the Court with ample evidence, often from TVA files, to raise more than a metaphysical doubt as to the condition of Tower 174 prior to the accident, and whether its condition after the accident warranted destruction and replacement. The Court agrees with Defendants that genuine issues of material fact remain to preclude a grant of partial summary as to depreciation. The Court DENIES Plaintiffs' motion for partial summary judgment on the issue of depreciation.