**KENDALL v. UNITED STATES.**

**No. 46199.**

Court of Claims.

April 7, 1947.

William P. Ellis, of Portland, Or., for plaintiff.

J. Frank Staley, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Leavenworth Colby, of Washington, D. C., on the brief), for appellee.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

This is a suit for just compensation for the vessel Gene which was requisitioned by the Government, through the War Shipping Administration, on February 1, 1943. That Administration later determined the value of the vessel to be $15,000 and tendered that sum. The owner rejected the tender, and, pursuant to the statute, 75% of the offered amount was paid and the owner was left free to sue for what he regarded as just compensation. The owner died before bringing suit, and the plaintiff is his executrix.

The wood hull of the Gene was built in 1929, as a part of a vessel named the Canco. In 1938 a fire made unusable all of the Canco except the wooden hull and some machinery. The plaintiff's testator then purchased the hull, and had the Gene built upon it. The cost of the hull and the additional construction was some $30,000. The reconstruction cost of the Gene on the date of requisition would have been $47,000.

From the time of our entry into the war in December 1941, there was no general market for vessels such as the Gene, whose primary purpose was use as a pleasure craft. Manpower and fuel were not available for such use, and only a speculator who planned to lay up the vessel until the end of the war, would purchase, and only at a large discount. A vessel like the Gene, in her February 1, 1943, age and condition would have had a market value during the years immediately prior to the war, of $15,000. The plaintiff is claiming a value of $50,000 at the date of requisition, and presented three witnesses who testified that there was a market for the Gene in the Puget Sound area where she had been built and where she was on the date of requisition, and that the market value was from $45,000 to $55,000. Two of these witnesses cited no instance of a sale of a comparable vessel made after December 7, 1941. The third witness cited sales of four vessels, one of them considerably smaller than the Gene to an electrical contractor who had work in Alaska, and the other three, somewhat larger than the Gene, to a contractor engaged in building roads, railroads, and air bases in Alaska. These sales were at prices proportionate to the value which the witnesses placed on the Gene. Both purchasers were engaged in performing contracts for the Government on a cost-plus basis.

We do not think that this testimony proves a dependable market for the Gene at a price three times what its market value would have been when there was a dependable market. The small number of sales; the fact that the two purchasers involved would not have had the normal urge to keep down the price, as does a purchaser who is paying his own money; the highly individual nature of vessels, and of the Gene in particular, making it uncertain

whether one of the apparently small number of available purchasers would happen to want the Gene; these circumstances persuade us that there was no market for the Gene to which we can look to determine what would be just compensation.

We look therefore to her cost, her condition, what her market value was when last there was a market, the trend of prices upward at the time the market was restricted by the war, the fact that, constructed as she was she was usable for commercial purposes. We find that $25,000.00 was the value of the Gene on the date of her requisition, and the plaintiff may recover the unpaid portion of that amount, with interest as shown in the conclusion of law.

It is so ordered.

JONES, WHITAKER, and LITTLE-TON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.