## TURKINGTON et al. v. UNITED STATES.
### No. 46273.

Court of Claims.

May 5, 1947.

Philip M. Fairbanks, of Washington, D. C. (Northcutt Ely, of Washington, D. C., and James A. Quinby and Derby, Sharp, Quinby & Tweedt, all of San Francisco, Cal., on the brief), for plaintiff.

Leavenworth Colby, and John F. Sonnett, Asst. Atty. Gen. (Frank Staley, of Washington, D. C., on the brief), for defendant.

WHITAKER, Judge.

The only issue in this case is over the amount which is just compensation for the requisition by the War Shipping Administration of the tugboat Pacific on February

29, 1944. Plaintiffs were paid 75 per cent of the amount of the award of $11,500. They claim a value of $30,000. Defendant says the value of the vessel was between $11,500 and $20,000 and suggests $15,000 as the correct amount. The commissioner of the court found a value of $20,000.

Plaintiffs undertake to support the value they claim by proof of (1) earnings of the vessel; (2) amount paid for the requisition of a similar vessel; (3) offers for her purchase; (4) reproduction cost; and (5) the testimony of expert witnesses.

Defendant relies principally on the age of the vessel and expert testimony as to value.

■ At the time of her requisition the vessel was earning an amount altogether out of proportion to her worth. She was under bareboat charter hire to the Marinship Corporation for $2,450 per month. This was about 33 cents per horsepower per day for a 20-hour day, as against a rate of 10 cents per horsepower generally paid by governmental agencies at the time. The rent was being paid by a contractor on a cost-plus contract with the Government. Whether or not this is another instance of that execrable indifference to the cost of a project, of which too many cost-plus contractors have been guilty, secure in the knowledge that, whatever the cost, they would be reimbursed by the Government, we do not know; but it bears a remarkable resemblance to it. Admiral Moran, the Assistant Deputy Administrator of the War Shipping Administration, testified, "I think they were grossly negligent in the shipyards to have paid that price for that tug." It was because of this excessive rental that the War Shipping Administration requisitioned the vessel. Proof of such earnings is no proof at all of the value of the vessel. Kendall v. United States, Ct.Cl., 71 F.Supp. 348.

■ Evidence of the amount paid by the War Shipping Administration for the requisition of the Basalt, a similar vessel, is of but little value. United States, ex rel., and for Use of Tennessee Valley Authority v. Bailey, 5 Cir., 115 F.2d 433; United States, ex rel., and for Use of Tenn-

essee Valley Authority v. Reynolds, 5 Cir., 115 F.2d 294; Lewis on Eminent Domain, 3rd Ed., sec. 667, and cases there cited. Lewis says that "Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise * * *. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other party taking less than is considered to be the fair market value of the property."

■ Proof of offers which the owner testifies he received for the vessel has no probative value The Supreme Court in Sharp v. United States, 191 U.S. 341, 348, 349, 24 S.Ct. 114, 115, 48 L.Ed. 211, says: "* * *. It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might, in the end, prove profitable. There is no opportunity to cross-examine the person making the offer, to show these various facts. * * * If the offer were admissible, not only is it almost impossible to prove (if it exist) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. To be of the slightest value as evidence in any court, an offer must, of course, be an honest offer, made by an individual capable of forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. * * * Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to

cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject. Especially in this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them. There is no chance to cross-examine as to the circumstances of the party making the offer in regard to good faith, etc. * * *"

See also Lewis on Eminent Domain, 3rd Ed., sec. 666, and cases there cited.

The reproduction cost helps us but little. There is no testimony as to the amount of depreciation suffered by the vessel nor testimony on the proper method for computing theoretical depreciation. If the method adopted in Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 159, 45 S.Ct. 465, 69 L.Ed. 890, is used, there would be no remaining value in the vessel. If the "I. C. C. method" of 5 per cent annually on diminishing balances is used, the vessel would have a remaining value of something over $8,000. The Government admits a remaining value of between $11,500 and $20,000, suggesting $15,000 as probably the correct figure. This value is substantially in excess of the reproduction cost less any arbitrarily arrived at depreciation.

There was no testimony as to sales of comparable vessels. The hull of the vessel was more than 40 years old. Her engines were more than 20 years old, but between nine and ten thousand dollars had been spent on them a few years before requisition. Both the hull and the engines were in good condition when requisitioned; but what they were worth separately we cannot tell from the testimony.

We seem to be driven to reliance on the expert testimony offered. As is nearly always the case this varies as much as the contentions of the parties; indeed, in this case, it varies more than their present contentions. Plaintiffs' witnesses testify to market values varying from $33,000 to $56,000; defendant's witnesses, from $11,500, the amount of the award, to $25,000.

A. W. Young, defendant's witness who put the highest value on the vessel, $25,000, was a marine surveyor for the Fireman's Fund Insurance Company, a part of whose duty was to appraise vessels for insurance purposes. He was also employed by the War Shipping Administration for the purpose of making appraisals. Admiral Moran, Assistant Deputy Administrator of the War Shipping Administration, a witness for the defendant, speaks of Mr. Young in the highest terms, although he said he did not always agree with his appraisals. Mr. Young testified the vessel had a value of $25,000, which he said was "absolutely tops." Another of defendant's witnesses, H. J. Hart, was the president of the Puget Sound Tug & Barge Company. He testified to a value of $20,000. The others testified to lesser values.

Shortly before the requisition, on October 9, 1943, plaintiffs requested Captain Emile C. Genereaux, a reputable marine surveyor, to make an appraisal of the vessel for insurance purposes. He made a thorough examination of her, including a trip around the bay for an hour under full power and reverse. He appraised the vessel at $25,100. Plaintiffs offered him as a witness to prove this value.

Thus, we have a witness offered by the Government testifying to a market value of $25,000, and a witness offered by plaintiffs testifying to a value for insurance purposes of $25,100. Both of these witnesses were engaged in the business of making appraisals of vessels. Mr. Young certainly did not appraise it at a higher value than he thought the facts demanded; and Mr. Genereaux, of course, wanted to put as high a value on it as he legitimately could. We accept their testimony as the best evidence available, and fix $25,000 as her fair market value, spare parts included.

Plaintiffs are entitled to recover the sum of $16,375, plus 3 per cent interest on $8,625 from February 29, 1944, to the date of payment of that amount on September 14, 1944, and plus 3 per cent interest on $16,-

375 from February 29, 1944, to the date of payment thereof, not as interest but as a part of just compensation. Judgment for this aggregate amount will be entered. It is so ordered.

MADDEN, JONES, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.